IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Z.H., a minor by his Mother,
MICHELLE BERISH

        Plaintiff,

        v.

PENN HILLS SCHOOL DISTRICT,
and Principal Shaun Cooke

        Defendants.

12cv1696
**ELECTRONICALLY FILED**

### Memorandum Opinion

Pending before this Court is defendants' motion to dismiss plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (doc. no. 25). After careful consideration of the motion (doc. no. 25), and plaintiff's response thereto (doc. no. 28), defendants' motion will be GRANTED.

### I.    Factual and Procedural Background

Plaintiff,[1] on behalf of her minor child, ZH, filed her first Complaint before this Court on November 20, 2012. Doc. No. 1. Plaintiff's original Complaint contained only one count alleging a denial of due process of law in violation of the Fourteenth Amendment against Defendant, Penn Hills School District ("Penn Hills"). Then, on December 12, 2012, Plaintiff filed an amended complaint against Penn Hills. Doc. No. 9. Plaintiff's Amended Complaint contained two counts against Penn Hills: (1) denial of due process of law in violation of the Fourteenth Amendment; and (2) racial discrimination in violation of Title VI. On January 16,

---

1 The Court notes that Berish does not have standing to assert these claims, rather she asserts them on behalf of her son ZH, who has standing. However, for simplicity the Court will refer to Berish as "plaintiff" or "parent" and ZH as "ZH" or "student."

2013, following the Initial Case Management Conference, at which this Court granted plaintiff's request to file a Second Amended Complaint, plaintiff so filed a Second Amended Complaint. Doc. No. 23. In addition to adding a defendant, Principal Shaun Cooke, plaintiff's second amended complaint contains, *inter alia*, the following factual averments:

- Student, ZH, is a 13-year old African American male and thus is a member of a protected class, enrolled at Linton Middle School;

- On October 22, 2012, parent submitted a "Parent Concern Form" to Penn Hills raising concerns about racial profiling, harassment, and Penn Hills personnel taunting student in an attempt to get him to act out;

- On October 23, 2012, defendant, Prinicipal Shaun Cooke, removed ZH from class to inform him that he would be going to an alternative school, without providing notification of the reasons student would be transferred;

- ZH returned to class after meeting with Principal Cooke and rode the bus home. Principal Cook gave ZH a card stating "return to alt ed";

- Penn Hills made no offer to hold an informal hearing prior to implementing the placement at the alternative school. However, Principal Cooke met with plaintiff that day (October 23, 2012) and parent "had a discussion with Cooke" concerning some difficulties student was having at home and explained that student was seeking treatment;

- At no time during this conversation did Cooke present any notice of the reason student was being referred to alternative education;

- On October 26, 2012, Cooke again pulled student out of class and informed him not to return to school;

- While student alleges that he attended school on October 24 and 25, 2012, without incident, he attaches to his Second Amended Complaint a copy of an email stating that on October 24, 2012, student used inappropriate language during class and the email which was sent to Principal Cooke by a teacher on October 26, 2012, was actually presented to parent during a meeting Principal Cooke had with his mother on October 26, 2012. Doc. No. 23-3;
- Also, during this meeting, Principal Cooke informed parent that student was suspended for two days;
- Student was never given an opportunity to be heard on these charges as Cooke produced the email for the first time when meeting with parent on October 26, 2012.
- Cooke provided no information to parent or student regarding why student was not to return to school (although that allegation seems to contradict the exhibit which plaintiff attaches to the Second Amended Complaint);
- Parent kept student out of school on October 29, 2012, which was the first-day of the two-day suspension, and there was no school on October 30, 2012;
- Parent then sent student to school on October 31, 2012, but Penn Hills "informed her he was not permitted to return, as he had not served his two-day suspension";
- Student was then picked up from school on October 31, 2012, by his godmother, upon request of Penn Hills;
- On that same day, October 31, 2012, parent went to the school to turn in a request for the release of student's school records;
- When parent submitted the request, she also inquired as to any homework student

3

needed to complete for days he was suspended, Principal Cooke informed parent there was no makeup work because student was not on the roster and was no longer a student;

- Parent received a call from the alternative education program asking why student had not attended that day; and,

- Parent had at least three meetings with Principal Cooke regarding ZH's behavior and his assignment to the alternative education program.

Plaintiff claims that because Penn Hills failed to provide any information related to the alternative school, such as where the school was located, what time school began, or whether transportation would be provided, that these actions constitute a *de facto* expulsion, and that Penn Hills failed to follow the requirements of an informal hearing process under 22 Pa. Code § 12.8(c)(2), and the Fourteenth Amendment of the United States Constitution.

According to plaintiff, ZH was then improperly excluded from school for 32 days, and this violated his procedural due process rights under the both the Pennsylvania Code and the Fourteenth Amendment of the United States Constitution. He, thus, brings a two count Second Amended Complaint asserting due process claims in violation of 42 U.S.C. § 1983, against defendants Cook and Penn Hills, and racial discrimination in violation of Title VI against Cooke only.

## II. Standard of Review

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and

where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

### III. Discussion

#### A. Count I – Due Process Violation

Count I of Plaintiff's Second Amended Complaint alleges that ZH was excluded from school without a hearing, thereby resulting in the denial of due process of law, in violation of the the Fourteenth Amendment.

Plaintiff, alternatively, alleges that this expulsion, if not a formal expulsion, was a "de facto" expulsion because defendants assigned ZH to alternative education without providing ZH and/or his parent with information related to the alternative school such as the location, time, and transportation.

Here, accepting the well-pleaded facts as true, the Court cannot stretch these allegations to fit into the rubric of an expulsion from school, and the placement into an alternative education program does not meet the definition of an expulsion, "de facto," or otherwise.

In 1974, the Department of Education and the State Board of Education adopted, as State policy, a code of students rights and responsibilities: 22 Pa. Code § 12.1, *et seq*. These regulations include the basic tenet that "all persons residing in the Commonwealth between the ages of six and 21 years are entitled to a free and full education." Section 12.1. Section 12.6 empowers the board of school directors to define and publish the types of offenses that would lead to expulsion from school. Section 12.6 further delineates different forms of exclusion as: (1) temporary suspension; (2) full suspension; or (3) expulsion. A temporary suspension is

6

defined as an exclusion for up to three school days by the principal, without a hearing, while an expulsion is defined as a period exceeding 10 school days.

Simply put, the facts, as alleged in this third round of pleading do not equate to an expulsion. Rather, the facts are more akin to a temporary (two day) suspension. In order for student to have been expelled, "de facto," or otherwise, plaintiff is required to allege that ZH was excluded from school *by Penn Hills* for a period exceeding 10 days without a formal hearing. The factual allegations amount to no more than a two-day suspension, and, as explained below, this type of suspension does not give rise to a formal due process hearing. Furthermore, because plaintiff alleges that the school district also provided ZH with a placement in their alternative education program, such a placement is not defined as an expulsion by the Public School Code.

The Pennsylvania School Code explains that the alternative education program is designed to remove "disruptive students from regular school in order to provide those students with a sound educational course of study and counseling designed to modify disruptive behavior and return the students to a regular school curriculum." 24 P.S. § 19-1901C. The Pennsylvania School Code defines "disruptive student" as one whose misconduct would merit suspension or expulsion under school policy. 24 P.S. § 19-1901C.

Count I of the Second Amended Complaint does not allege a violation of state law, rather it only alleges a violation of *Federal* due process.[2] The United States Court of Appeals for the Third Circuit has held that failure to comply with the provisions of 22 Pa. Code § 12.8(c) "does not alone establish a violation of due process." *Shuman ex rel. Shertzer v. Penn Manor Sch.*

---

2 To the extent that the Second Amended Complaint alleges a violation of state law, the Court will decline to address that supplemental state law claim except to note that on the face of the Second Amended Complaint, defendants appear to meet any alleged requirement for an informal hearing under 22 Pa. Code § 12.8.

*Dist.*, 422 F.3d 141, 150 n.4 (3d Cir. 2005). As the United States Court of Appeals for the Third Circuit noted, "state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes; rather, the minimum, constitutionally mandated requirements of due process in a given context and case are supplied and defined by federal law, not by state law or regulations." *Id*. (citing *Patterson v. Armstrong Cnty. Children & Youth Servs.*, 141 F.Supp.2d 512, 537 (W.D. Pa. 2001) (Lee, J.)).

"[I]n connection with a suspension of 10 days or less . . . the student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id*. at 149-50 (alterations and omission in original) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). The United States Supreme Court has explained that:

> There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is . . . Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school.

*Id*. at 150 (omission in original) (quoting *Goss*, 419 U.S. at 582).

Under this framework, it is evident from the facts as alleged that ZH was not only given due process, but the District went beyond what is required under the Constitution. Principal Cooke explained (as did the teacher) why ZH was being suspended and placed in alternative education. ZH was given an opportunity to explain his actions to Principal Cooke. Furthermore, Principal Cooke met with plaintiff and discussed with her the reasons for the suspension and the placement in alternative education. These actions, which are alleged in the Second Amended

8

Complaint, meet the due process requirements of the Fourteenth Amendment. *Id*.; *S.G. v. Sayreville Bd. of Educ*., 333 F.3d 417, 424 (3d Cir. 2003).

As for plaintiff's (alternative) allegations that Penn Hills failed to provide plaintiff with information regarding where the alternative education program was located, what time it began, and whether transportation would be provided, which alleged amounted to a "de facto" expulsion of 32 days, other allegations in the Second Amended Complaint bely those contentions. In fact, plaintiff details in the Second Amended Complaint that Penn Hills called her on October 31, 2012, and left a voice mail messaging inquiring as to why ZH had not attended the alternative education program that day. On the face of the Second Amended Complaint, then, ZH did not suffer an expulsion and there was no information withheld from plaintiff. Because "expulsion" is defined as an exclusion from school, by the District, for a period exceeding 10 days and plaintiff has failed to allege sufficient facts to support an allegation that ZH was excluded from school for more than 10 days, but rather, admits that he was assigned to an alternative education program by defendants, Count I of the Second Amended Complaint must be dismissed.

### B. Count II – Racial Discrimination

Count II of Plaintiff's Second Amended Complaint alleges that Principal Cooke violated ZH's civil rights by discriminating against him on the basis of his race. Title VI provides that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Although it is not clear if Principal Cooke is being sued in his individual or official capacity, plaintiff fails to state a claim under either theory. If plaintiff is seeking to sue Principal Cooke in his individual capacity, the United States Court of Appeals for the Third Circuit has
9

stated that "[i]ndividual liability may not be asserted under Title VI."  *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003); *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir.1996)).3

If Principal Cooke is being sued in his official capacity, the claim is "considered under the framework established by the [United States] Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Manning v. Temple Univ.*, 157 F. App'x 509, 513 (3d Cir. 2005). United States Magistrate Judge Mitchell summarized the prima facie showing required of a plaintiff in the educational context as follows:

> [P]laintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendant in pursuit of his education; (3) he was qualified to continue in the pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of the protected class.

*Stewart v. New Castle Sch. Dist.*, 2011 WL 1237929, *5 (W.D. Pa. Feb. 18, 2011) (citation omitted) *adopted by* 2011 WL 1256770 (W.D. Pa. Apr. 4, 2011) (Ambrose, J.).

Defendant argues that the fourth prong of this test, that ZH was treated differently from similarly situated students, is not satisfied.  Plaintiff's Second Amended Complaint only contains conclusory allegation that the fourth prong is satisfied.  Paragraph 78 avers that "[i]ndividuals outside of the Student's protected class have been treated differently than Student."  And, paragraph 47, alleges "[u]pon information and belief, Student was treated differently from similarly situated students who are not members of his protected class, as these students are not excluded from school and placed in alternative education in the aftermath of making a complaint

---

3 Principal Cook also contends that he is qualifiedly immune from suit.  Because this Court has found that there is no constitutional claims and is dismissing on these reasons, the Court declines to address this defense.

without due process." Plaintiff attempts to argue that such conclusory statements are sufficient to state a claim; however, the conclusory allegation falls short of the pleading standard of *Twombly* and *Iqbal*.

Plaintiff is correct "that comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff's prima facie case" in some instances. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 272 (3d Cir. 2010). However, Anderson was a mortgage lending case, which is distinguishable from the case at bar. Furthermore, conclusory allegations, without any factual averments in support thereof, are insufficient to survive a motion to dismiss. For example, in *Fessler v. Sauer*, the United States Court of Appeals for the Third Circuit affirmed the dismissal of a Title VI claim because it only contained a conclusory allegation of discrimination. 455 F. App'x 220, 224 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 210); *see also Osei v. La Salle Univ.*, --- F. App'x ---, 2012 WL 3553617, *2 (3d Cir. Aug. 20, 2012) (student's failure to describe how students who are not members of a protected class were treated warranted dismissal); *O.R. v. Hunter*, 2010 WL 3733016, *3 (D. N.J. Sep. 17, 2010) (dismissing a Title VI claim because "Plaintiff has failed to allege the existence of similarly-situated Caucasian students who were treated in a different manner than he was") *aff'd by* 440 F. App'x 69 (3d Cir. 2011); *cf. Waiters v. Aviles*, 418 F. App'x 68, 71 (3d Cir. 2011) ("[Plaintiff's] amended complaint included only conclusory allegations, which is insufficient to sustain a cause of action.").

"[T]he purpose of the prima facie test is to eliminate the most common nondiscriminatory reasons for the defendant's actions." *Id*. at 272-73 (internal quotation marks, alteration, and citation omitted). Taken as a whole, the Second Amended Complaint does not eliminate such common nondiscriminatory reasons. Plaintiff attached to the Second Amended Complaint an

11

email sent by ZH's teacher, to Principal Cooke, sent the same day as the suspension, alleging that ZH had used an explicative to his teacher, among other things. Plaintiff's conclusory allegation of racial discrimination, without any description of how students who are not members of a protected class were treated differently by Principal Cooke, will not survive a motion to dismiss. Keeping in mind that "courts are to refrain from second-guessing school administrators' disciplinary decisions," *C.S. v. Couch*, 843 F. Supp. 2d. 894, 910 (N.D. Ind. 2011)(*citing Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47 (1999)), the Court will refrain from doing so here. Accordingly, Count II of Plaintiff's Second Amended Complaint must be dismissed.

IV. **Conclusion**

For these reasons, defendants' motion to dismiss will be GRANTED.

An appropriate Order follows.[4]

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record

---

[4] As the Court stated at the ICMC, and because there are other pending issues related to a potential Individual Education Plan (IEP), which the parties claim to have been working diligently on, the Court encourages the parties to go forward with the ADR session currently scheduled before mediator Pretz by March 15, 2013. See Doc. No. 22.